Betty Jane **NORTH**

v.

The **UNITED STATES.**

**No. 598–81C.**

United States Claims Court.

Oct. 8, 1982.

Allen J. Storinge, Syracuse, N.Y., atty. of record, Washington, D.C., for plaintiff.

Lynn Bush Ferguson, with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., for defendant; David I. Tevelin, Washington, D.C., of counsel.

## ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

SPECTOR, Judge:

## OPINION

Plaintiff, the surviving spouse of Milton North, filed a claim under the Public Safety Officers' Benefits Act [1] which provides that:

> In any case in which the Administration[2] determines under regulations issued pursuant to this subchapter, that a public safety officer has died as the direct and proximate result of a personal injury sustained in the line of duty, the Administration shall pay a benefit of $50,000 * *.

The claim was denied initially by the LEAA, September 27, 1977, on the grounds that Mr. North's death was not the direct and proximate result of a personal injury as defined by the regulations.[3] Following a request for reconsideration, a hearing was provided on January 25, 1978. The decision of the LEAA hearing officer affirmed denial of plaintiff's claim on May 16, 1978. Following a request for review, the Administrator of LEAA affirmed the decision of the hearing officer on July 24, 1978, and he

---

1. Pub.L. No. 94 430, 90 Stat. 1346 (1976), 42 U.S.C. § 3796 (1976 Ed.).

2. Law Enforcement Assistance Administration (LEAA).

3. 28 C.F.R. 32.2(d)(e) and (f).

reaffirmed that decision on January 5, 1979.[4]

■ An action to compel payment of the claim brought in the U.S. District Court, Northern District of New York, was transferred on joint motion to this court by order of the district judge September 18, 1981.[5] In reviewing administrative decisions, this court ordinarily determines:

> * * * (1) whether there has been substantial compliance with statutory and implementing regulations; (2) whether there has been any arbitrary or capricious action on the part of the Government officials involved; and (3) whether there was substantial evidence supporting the decision * * *.[6]

## STATEMENT OF FACTS

On November 9, 1976, the decedent was serving as a volunteer firefighter with the Elbridge, New York Volunteer Fire Department. Mr. Norton was a retiree who was then 70 years of age. He had been a volunteer fireman for more than 25 years. He had a history of heart trouble, having been hospitalized in 1962 for coronary insufficiency and again in April 1976, 6 months prior to his death, for congestive heart failure. His death occurred in the course of his duties while responding to a house fire under the jurisdiction of the adjacent Jordan Volunteer Fire Department.

Mr. North drove his personal vehicle, equipped with the usual volunteer fireman's lights and siren, to the Jordan Fire House, and thence to the site of the fire after the Elbridge units had been called to assist. He then drove a fellow volunteer (who had to report to his regular job) back to the Jordan Fire House, and returned to the scene of the fire. The house fire was 50 feet from the road and the Elbridge units had to park behind the Jordan units which had earlier arrived. More water was needed and the Elbridge volunteers were asked to move a portable tank off one of the Jordan trucks to the front lawn of the burning house. After an unsuccessful effort to move the Jordan portable tank, an effort in which Mr. North participated, he and three other Elbridge volunteers successfully moved a portable tank from one of their own units to the place where it was needed.

The portable tank was stored on the truck about 6 feet off the ground. It was necessary to slide it off the truck and carry it about 100 feet to the place where it was to be unfolded and set up. A portable tank, consisting of tubular steel and canvas, weighs from 200 to 300 lbs. and is 3 feet high and 10 feet long in the folded position. When unfolded into a 10-foot square, it holds about 1100 to 1500 gallons of water. The four men therefore set it up, went back to their tanker for hose and proceeded to fill it. When a Jordan suction hose was dropped in the tank, it accidentally produced a hole in the canvas. Mr. North, upset by the accident, stopped the leak by stuffing a towel in the hole.

The fire produced heavy smoke and there was testimony that it clung to the ground in the vicinity of the burning house. Firefighters working in the house wore a breathing apparatus known as a Scott Air Pack. Those working outside the house, including Mr. North and the other men moving and installing the portable tank, did not wear a breathing apparatus nor did they believe it was necessary. After they had the portable tank in operation, Mr. North was seen standing at the end of the driveway, near the road. A short time later, a Jordan volunteer on the roof of the house saw Mr. North collapse and went to

---

**4.** The administrative proceedings were in accord with LEAA's implementing regulations. For a brief description thereof *see Smykowski v. United States,* — Ct.Cl. ——, 647 F.2d 1103, 1105 at n. 4 (1981).

**5.** *North v. Bell,* Civil Action No. 79-CV-83. *See also* and *cf. Russell v. LEAA,* 637 F.2d 354 (1981).

**6.** *See Morrow v. United States,* —— Ct.Cl. —— , 647 F.2d 1099 at 1102 (1981). *See also, Jim's Valley Apiaries, Inc. v. United States,* Ct.Cl. No. 488-79C, Trial Judge's opinion filed July 9, 1982.

his aid. First aid applied at the scene was to no avail, and Mr. North was pronounced dead upon his arrival at the hospital.

Mr. North's personal physician, Dr. Fox, listed the cause of death as "arteriosclerotic heart disease." No autopsy or toxicology analysis was performed. Plaintiff's claim is supported by the hearing record of the New York State Workmen's Compensation Board,[7] the death certificate, an affidavit from the Chief of the Elbridge Fire Department (to the effect that no autopsy or toxicology analysis was performed) and the hospital report. These documents were submitted for review to Dr. Thompson, Chairman of the Department of Forensic Sciences at the Armed Forces Institute of Pathology. He also concluded that Mr. North had died of "arteriosclerotic heart disease." Dr. Thompson added:

It is possible that Mr. North's exertion immediately prior to his death precipitated his heart attack, but the attack would not have occurred if the underlying chronic heart disease had not been present. According to witnesses at the fire, the exertion of carrying the portable water tank was not unusual for firemen in the process of fighting a fire, and it is my opinion that Mr. North did not sustain a traumatic injury during his firefighting duties.

Following initial denial of the claim by LEAA,[8] the assigned hearing officer submitted his hearing record and other material to Dr. Dixon, Chief of the Division of Forensic Pathology at the Air Force Institute of Pathology, who concluded as follows:

From the medical testimony of Dr. Fox [Mr. North's personal physician], the history of chronic cardiac disease spanned more than thirteen years with two previous hospitalizations for congestive heart failure due to atherosclerosis of the coronary arteries. Although the patient was well-compensated or in good control medically, disease of the cardiac circulation was present and might at any time manifest itself fatally with little or no apparent antecedent cause. The descriptions of the activities of the decedent just prior to his collapse indicate the stress and strain of physical exertion which, in my opinion, were adequate to worsen the underlying condition and upset his compensated state. Increased demand through intense exercise on a heart with a compromised blood supply may lead to a rapidly fatal arrhythmia or abnormality in the rate of the heart. There is no real traumatic event described in this as the direct and proximate cause of death; the cause of death was a fatal arrhythmia due to a pre-existing chronic cardiac condition exacerbated by stress and strain. This death is not, therefore, elligible [sic] under the Act from a medical standpoint. Certainly, in a case such as this, an autopsy should be performed to document factually and anatomically the cause of death and the extent of disease.

It is noteworthy, that Dr. Fox, who had treated the decedent regularly ·for many years, testified at the New York Workmen's Compensation hearing that "(a) man with this type of heart condition, who is susceptible to lifting or disposing any excess weight is [sic] an unbearable and intolerable stress on a previously damaged heart." On cross-examination he further testified:

Q Doctor, you didn't tell him he should get out of the fire department after his attack in April?

A Yes, I did.

Q You did tell him to get out?

---

7. The Compensation Board record has been incorporated into the LEAA administrative record. The Workmen's Compensation Board concluded, under its standards, "that claimant's death is causally related to an accident occurring in the line of duty."

8. The denial was dated September 27, 1977, as earlier mentioned. Specifically, that denial was based on the grounds that "a public safety officer's death which results from a chronic, congenital, or progressive cardiac or pulmonary disease, is not covered by the Act, unless a traumatic injury was a substantial factor in the death * * *. On the basis of the evidence, we have concluded that Firefighter North did not suffer a traumatic injury as defined in Section 32.2(f) of the regulations * * *."

A   Yes, I did.

Finally, Dr. Cohen who reviewed the file for the insurance carrier in the Workmen's Compensation proceeding, after reviewing Mr. North's physical exertions that day, concluded:

For someone who had two episodes of congestive heart failure within the previous eight months, this must be considered to be an outrageously foolhardy maneuver.   Indeed, it [sic] my opinion that it was most likely the cause of his fatal ventricular fibrillation.

Patients with major heart disease are wisely advised by their physicians to refrain from serious physical exertion in the hope that ventricular fibrillation will be prevented.   It appears from Mr. McMahon's report that such an attempt was made by Dr. Fox and the advice was rejected by Mr. North.

It is my belief that given the underlying arteriosclerotic heart disease that the physical exertion of 11/9/76 at the scene of the fire was a competent producing factor in Mr. Milton North's death.

### Discussion

On the basis of the foregoing facts, summarized from the administrative record, plaintiff argues that the LEAA regulations under which its determination was made, are inconsistent with the Act.   Specifically her counsel questions the regulatory definition of "personal injury" as "any *traumatic* injury, as well as diseases which are caused by or result from such an injury; but not *occupational diseases;*" and the regulatory definition of "traumatic injury" as "a wound or other condition of the body caused by external force, including injuries inflicted by * * * *chemicals* * * * *climatic conditions* * * * but *excluding stress and strain.*" (Emphasis supplied).

Counsel also takes issue with a commentary to the regulations stating that:

* * * deaths caused by traumatic injuries do not therefore include deaths directly attributed to exertion or stress, encountered in the performance of duty, *unless the stress resulted in or was caused* by a traumatic injury that was a substantial factor in the officer's death.   [Emphasis supplied].

He also questions an implementing opinion of the LEAA General Counsel as follows:

* * * Generally you should consider a traumatic injury a "substantial factor" in an officer's death when (1) *the injury itself would be sufficient to kill the officer, regardless of the officer's physical condition at the time of death;* or (2) the injury contributes to the officer's death to *as great a degree* as any other contributing factor such as pre-existing chronic congenital or progressive disease.   [Emphasis supplied].

The LEAA determination, in addition to finding that "Firefighter North's death was not the direct and proximate result of a personal injury as defined by 28 C.F.R. 32.-2(d), (e) and (f)," [9] goes on to say in the words of the regulations:

* * * Specifically, a public safety officer's death which results from a chronic, congenital, or progressive cardiac or pulmonary disease is not covered by the Act, unless a traumatic injury was a substantial factor in the death.   See the Commentary on Section 32.2(e) at page 23260 of the enclosed regulations.   On the basis of the evidence presented in the case, we have concluded that Firefighter North did not suffer a traumatic injury as defined in Section 32.2(f) of the regulations.[10]

Thus plaintiff argues that by construing "personal injury" to be synonymous with "traumatic injury," LEAA has distorted the plain language of the statute.   She also points out that the LEAA regulations do not conform with accepted Workmen's Compensation doctrine, contrary to the im-

---

9.   *See* note 3, *supra.*

10.   Plaintiff cites a host of cases to the effect that regulations, in order to be valid, must be

consistent with the statute under which they are promulgated.

plications in *Russell v. LEAA,* 637 F.2d 1255 (9th Cir.1980),[11] and contrary to LEAA's acknowledgment that " * * * virtually all State Workmen's Compensation Laws cover, in some degree, death attributable to heart disease.[12]

Finally, plaintiff asserts that the regulations, even if valid, should not be applied retroactively. Noting that they were issued 6 months after Mr. North's death, and that specific regulations recognizing certain smoke and carbon monoxide levels as a "substantial" cause of death were issued 10 months after his death, counsel argues that:

> [B]y the time the standards were established, it was a physical impossibility for Mrs. North to obtain a toxicology analysis. For the LEAA to now retroactively apply its regulation to deny benefits because of the impossibility of producing medical evidence would be unjust and should not be condoned by this Court.

In this connection, he cites regulations to the effect that:

> * * * In those cases where LEAA cannot reasonably determine which factor—the heart condition or the personal injury—was the substantial causal contribution to death, it shall resolve any reasonable doubt arising from the circumstances of the officer's death in favor of payment of the death benefit.

## CONCLUSIONS

■ The short answer to the attack which counsel has leveled against the foregoing regulations, is that in this case it is unnecessary to resort to the regulations at all in order to support the LEAA determination. That determination, tracking the words of the underlying statute, is that "Firefighter North's death was not the direct and proximate result of a personal injury * * *." There is in fact no evidence in this record that Mr. North sustained a personal injury prior to his death, or that a personal injury contributed in any way to his death. The overwhelming weight of the medical evidence is in accord. The LEAA determination is therefore easily supported by "substantial" evidence, and it is in accordance with the law.

Although differing Workmen's Compensation statutes in a multiplicity of states would under their quite different standards often reach a contrary result, they do not correspond to the specific standards mandated by the Public Safety Officer's Benefit Act of 1976. That Act requires a finding that death was the direct and proximate result of a personal injury sustained in the line of duty * * *."

In Morrow[13] and Smykowski,[14] it was found to be unnecessary to comment on the validity of portions of the regulations for reasons stated therein. In this case no causative injury has been shown, and plaintiff could not prevail under any reasonable interpretation of the statutory language. This is therefore an even stronger case for refraining from comment on the validity of the implementing regulations cited and relied upon by counsel.[15]

Without detracting in any way from the heroic and public-spirited service which Firefighter North contributed in his lifetime to the Elbridge Volunteer Fire Department, it cannot be found on this record that his death resulted from a personal injury within the contemplation of the relevant statute.

■ Plaintiff's argument that the regulations were retroactively applied, is also without merit. There were no regulations in effect at the time of his death, which occurred shortly after enactment of the statute. At the time of the claim, the regulations cited by LEAA were in effect. Plaintiff's lack of evidence as to smoke or carbon monoxide inhalation does not result

---

11. *See* and *cf.* note 7, *supra.*

12. 42 Fed.Reg. 23,254 (1977).

13. Note 6, *supra,* 647 F.2d at 1103, note 4.

14. Note 4, *supra,* 647 F.2d at 1106, note 8.

15. *See* and *cf. Canfield v. United States,* Ct.Cl. No. 339–79C, trial judge's opinion filed July 27, 1982, which comprehensively discusses the regulations and their relationship to the statute.

from the absence of regulations subsequently recognizing that type of evidence as an injury triggering a heart attack. Had there been any evidence of smoke or carbon monoxide inhalation, an autopsy or toxology test would have been warranted with or without regulations to that effect. But no credible evidence of smoke or carbon monoxide inhalation appears anywhere in the medical reports or anywhere in the record.

The foregoing considered, defendant's cross-motion for summary judgment is granted, plaintiff's motion is denied, and the petition is to be dismissed.