Lydia TAFOYA

v.

The UNITED STATES.

No. 613–84C.

United States Claims Court.

May 30, 1985.

Timothy Quinn, Denver, Colo., for plaintiff.

Thomas W.B. Porter, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant. John S. Koppel and David I. Tevelin, Washington, D.C., of counsel.

## OPINION

LYDON, Judge:

In this case,[1] the court is presented with defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment regarding plaintiff's, the mother of a deceased police officer from Denver, Colorado, request for review of an administrative decision denying her survivor's death benefits under the Public Safety Officers' Benefits Act, Pub.L. No. 94–430, 90 Stat. 1346 (1976), as amended, 42 U.S.C. §§ 3796–3796c (Supp. III 1979) ("PSOBA"). The primary issue in this case is whether the administrative hearing officer and Acting Administrator erred in concluding that plaintiff had failed to meet her burden of proving that her son was "in the line of duty" when he was killed. Having reviewed the entire administrative record, the submissions of both parties, the applicable statutory and regulatory provisions and pertinent case law, the court concludes, without oral argument, that the administrative determination was proper, given the applicable standard of review, and accordingly, grants defendant's motion for summary judgment.

### I.

The PSOBA provides in pertinent part:

In any case in which the Administration determines, under regulations issued

---

1. This case was transferred to this court from the United States Court of Appeals for the Tenth Circuit on November 20, 1984, pursuant to 28 U.S.C. § 1631 (1982). *Tafoya v. United States Department of Justice, LEAA,* 748 F.2d 1389 (10th Cir.1984).

pursuant to this subchapter, that a public safety officer has died as the direct and proximate result of a personal injury *sustained in the line of duty*, the Administration shall pay a benefit of $50,000 * *. [Emphasis added.] [42 U.S.C. § 3796(a)]

The statute then sets out a series of potential beneficiaries of the Act including children, a spouse, and dependent parents. There is no dispute in this case that plaintiff, the decedent's mother, is a proper beneficiary in this case as a dependent parent, assuming that the payment of the benefits is warranted.

Pursuant to sections 3796 and 3796c of the PSOBA, the Law Enforcement Assistance Administration (LEAA) promulgated a set of regulations to carry out the purposes of the Act. These regulations are contained in Part 32 of Title 28 of the Code of Federal Regulations (28 C.F.R. §§ 32.1–32.-24 (1981)). Section 32.2(c) of those regulations defines "line of duty" as:

* * * any action which an officer whose primary function is crime control or reduction, enforcement of the criminal law, or suppression of fires is obligated or authorized by rule, regulation, condition of employment or service, or law to perform, including those social, ceremonial, or athletic functions to which he is assigned, or for which he is compensated, by the public agency he serves. For other officers, "line of duty" means any action the officer is so obligated or authorized to perform in the course of controlling or reducing crime, enforcing the criminal law, or suppressing fires.

The issue in this case is whether the deceased police officer, plaintiff's son, was acting within the confines of this definition when he was killed on February 10, 1980. Though section 32.2(c) is the focal regulatory provision, there are other regulatory provisions at issue in this case which will be discussed *infra* in part III of this opinion. As stated earlier, a review of the administrative record evidences that plaintiff failed to meet her burden of proving that her son died in the line of duty warranting the payment of the death benefit which is the object of this litigation.

## II.

In reviewing the facts in this case, one point which is clear is that most of the circumstances temporally related to the death of David Tafoya (Tafoya), plaintiff's son and a former police officer in the Denver Police Department, remain a mystery. The facts relating to why he was killed and who shot him are at this time matters about which the parties, the Denver Police Department, the administrative hearing officer and the court can only conjecture and speculate. However, the court will set out those facts relating to Tafoya's tragic death which are well established.

On the evening of February 9, 1980, Tafoya, a member of the Denver Police Department for over 6 years, went to his off-duty job as a security person at the El Papa Gallo Azteca bar or dance hall in Denver, Colorado. Tafoya and two other off-duty policemen (Officers Anaya and Wittke) were employed by the El Papa Gallo presumably to keep the peace. The officers wore their uniforms and carried loaded police handguns even though they were off-duty.

After the clientele of the bar or dance hall left at approximately 2:00 a.m. in the early morning of February 10, 1980, the police officers and employees of the El Papa Gallo had a few drinks. Tafoya had apparently been drinking throughout the night and did not hesitate to continue to do so because he was off-duty the next day (February 10, 1980) and he could sleep off the effects of the alcohol in his van parked next to the bar. Sometime between 2:30 and 3:00 a.m. Tafoya passed out in the bar and Officer Anaya, the owner of the bar, and his son carried Tafoya to his van. Apparently, outside the bar Tafoya was able to walk with some assistance. They placed him in the back of his van fully clothed and placed his police revolver on the front seat. Officer Anaya apparently moved the van out of the bar's parking lot and left it, with

Tafoya sleeping inside, parked on the street near the bar.

The next fact which is clearly evidenced, is that the police received a call at around 4:03 a.m. on February 10, 1980, from a citizen reporting a shooting. Police arrived at the scene around 4:10 a.m. to find Tafoya lying in the street one and one-half blocks from his van. Tafoya was pronounced dead at the scene by ambulance personnel. An autopsy evidenced that he had been killed by three bullets shot into his chest from his own gun. The gun was found near Tafoya's body at the scene with no fingerprints on it. Tafoya also had a wound suffered from a blow to the back of his head and scuffed knees. His blood alcohol level was .312 percent. Witnesses living in the area reported hearing shots shortly before 4:00 a.m., seeing Tafoya on the ground, and witnessing a car leaving the area.

The Denver Police Department listed the death as a homicide. After thoroughly investigating the scene and Tafoya's van on the morning of the shooting, an extensive homicide investigation was carried out. Though the investigation stirred up several leads, the police were unable to make any arrests related to the shooting. The police were also unable to come up with any real concrete evidence as to why Tafoya left his van or why he was killed. The homicide investigation remains open but is not currently being actively pursued.

On July 14, 1981, Tafoya's parents, Russell Tafoya, Sr., now deceased, and Lydia Tafoya, plaintiff herein, submitted the proper LEAA form claiming the death benefits provided under the PSOBA.[2] In a letter opinion prepared by a LEAA claims' officer on December 2, 1981, and approved by the Director of Public Safety Officers' Benefits Program on December 3, 1981, their claim was denied. In denying the claim for benefits the LEAA claims' officer stated in pertinent part:

*Determination:* The claimants cannot provide sufficient evidence in support of their claim. In accordance with Volume 28, Section 32.21(b)[3] of the Code of Federal Regulations both the claimant and the deceased's employing agency, were notified and advised as to the evidence required to support and complete the claim. The Law Enforcement Assistance Administration is therefore closing this claim but will reopen it at a future date should the Denver Police Department's investigation develop the evidence necessary to prove Officer Tafoya's duty status. In response to [sic] the Denver Police Department advised the Law Enforcement Assistance Administration that its investigation has not produced

2. The court notes that the date of death of plaintiff's son was February 10, 1980. Plaintiff and her husband submitted their claim for death benefits on July 14, 1981. The regulation provides that such claims "shall be filed within one year after the date of death unless the time for filing is extended by the Administrator for good cause shown." 28 C.F.R. § 32.20(c). The claim in this case was filed after the one year deadline. The court can only assume that the Administrator found good cause to extend the time period in this case. Such good cause includes an indication from the claimant that he or she was unaware of the existence of the PSOBA or his or her eligibility for benefits. 42 Fed.Reg. 23261 (1977).

The court also notes that both Mr. and Mrs. Tafoya initially filed this administrative claim. The court will refer to plaintiff and her husband as "claimants" in its discussion of the administrative proceedings. However, since Mr. Tafoya passed away during the administrative proceedings, the court will refer singularly to "plaintiff"

(Mrs. Tafoya) during the discussion of the claim before this court.

3. Section 32.21(b) of the regulations states:

Whenever a claimant for any benefit or fee under the Act and the Regulations has submitted no evidence or insufficient evidence of any material issue or fact, the Administration shall inform the claimant what evidence is necessary for a determination as to such issue or fact and shall request him to submit such evidence within a reasonable specified time. The claimant's failure to submit evidence on a material issue or fact, as requested by the Administration, shall be a basis for determining that the claimant fails to satisfy the conditions required to award a benefit or fee or any part thereof.

This regulation clearly indicates that the burden is on the claimant to produce sufficient evidence on each material issue in order to satisfy his or her burden.

the necessary evidence to prove whether or not Officer Tafoya was acting in the line of duty at the time of his death. The Department further advises that its investigation is inactive, not cleared pending additional information. It is therefore determined in accordance with the Act and 28 C.F.R. 32.21(b), that the claimant cannot satisfy the conditions required to award a benefit under the Act. [Footnote added.]

The hearing officer determined that insufficient evidence had been provided to prove that the decedent had been acting in the line of duty at the time of his death.

On January 26, 1981, plaintiff and her husband (claimants) requested an oral hearing pursuant to 28 C.F.R. § 32.24.[4] Claimants requested such a hearing to show that they had presented sufficient evidence to prove that their son died in the line of duty. The hearing was held on April 28, 1982, in Denver, Colorado. Claimants presented testimony by a Denver Police Department investigator regarding Tafoya's shooting. The investigator described the investigation of the scene of the incident, showed a video tape of the scene as it appeared on February 10, 1980, discussed the autopsy report, and gave the Police Department's theory on what occurred the night of the tragic shooting. Claimants also presented several witnesses regarding their financial dependency upon their son. Finally, claimants submitted several exhibits relating both to the "line of duty" issue and the financial dependency matter. The hearing was conducted in an informal manner and the transcript reflects an effort by the parties and the LEAA hearing officer to flush out all the evidence relating to the claimants' claim.

█ On August 19, 1982, the LEAA hearing officer issued his opinion on claimants' request for reconsideration of the LEAA's initial denial of benefits. He upheld the denial. The hearing officer concluded that claimants had produced insufficient evidence to prove that Tafoya was acting in the line of duty when he was killed. He found that claimants' theory was based primarily on speculation (hearing officer's decision pp. 3–5). He also concluded that Tafoya's state of intoxication was such that he could not have left his off-duty status as a security person at the El Papa Gallo bar or dancehall and assumed a line of duty status (hearing officer's decision p. 5). Finally, emphasizing Tafoya's intoxicated state, the hearing officer concluded that, even if Tafoya was acting in the line of duty when he was shot, Tafoya's voluntary intoxication was the proximate cause of his death (hearing officer's decision pp. 5–6). If that was the case then 42 U.S.C. § 3796a(2) precludes the payment of any benefit. Based on these alternative findings the hearing officer upheld the denial of the benefits provided in the PSOBA.[5]

---

**4.** Such a request for reconsideration should have been submitted within 30 days of notification of the Administration's decision denying a benefit claim. 28 C.F.R. § 32.24(a). The LEAA issued its initial decision on December 3, 1980, and the request for reconsideration was dated January 26, 1981. The court can only assume that the 30-day time provision was waived by the LEAA or claimants did not receive notice of the decision until late December 1980.

The court also notes that the oral hearing requested by claimants was not held within 60 days after claimants' request for reconsideration as required by the regulation. 28 C.F.R. § 32.-24. Either the LEAA failed to comply with the regulation, acting in a manner consistent with an apparent pattern of flexibility regarding the regulatory time limits in this case, or claimants may have requested and been granted extensions of time though the record does not reveal such extensions. The parties do not deal with this matter in their submissions. If it is deemed error, it is clearly harmless error in the context of this case. See Turner v. United States, 231 Ct.Cl. 882, 885 (1982); Barnett v. United States, 223 Ct.Cl. 132, 137, 617 F.2d 230, 232 (1980).

**5.** The hearing officer did conclude that plaintiff and her husband (claimants) were financially dependent upon the deceased (hearing officer's decision p. 2). He also addressed the matter of a conversation between plaintiff's husband and a LEAA official. Apparently, the LEAA official attempted to discourage claimants' efforts at seeking an appeal. The hearing officer found the official's remarks ill-advised and improper. However, he noted that no harm was done in that claimants were not deterred in their efforts to seek the benefits and a complete hearing was conducted. Having reviewed the portion of the

Claimants, in an August 27, 1982, letter, requested the Administrator to review the decision of the LEAA hearing officer pursuant to 28 C.F.R. § 32.24(i). Claimants submitted a brief to the Administrator outlining their argument. On October 15, 1982, the Acting Administrator, Robert Diegelman (Diegelman), issued a letter opinion in which he upheld the hearing officer's determinations. In denying any benefits under the PSOBA, Diegelman stated in relevant part:

I further find that the decision is fully consistent with the Public Safety Officers' Benefits Act and the implementing regulations (28 C.F.R. Part 32). The decision clearly documents and supports the conclusion that there is no credible evidence to establish that Officer Tafoya was acting in the line of duty at the time of his death. While the conclusion that a public safety officer was acting in the line of duty need not be the only possible one to be drawn from the circumstances of death in order for 28 C.F.R. § 32.4 (reasonable doubt of coverage) to come into play, there is simply not enough evidence indicating that Officer Tafoya was acting in the line of duty to bring the rule into play and thus resolve any remaining unanswered questions in a way that would favor the payment of benefits.

Finally, even if Officer Tafoya were found to be acting in the line of duty, the evidence supports the conclusion that his voluntary intoxication was the proximate cause of death and would have independently precluded the payment of benefits.

Again, the primary emphasis was placed on claimants' failure to introduce sufficient evidence to show that Tafoya was killed while acting in the line of duty.

Plaintiff then appealed this final agency decision denying her claim to the United States Court of Appeals for the Tenth Circuit. As indicated earlier, the Tenth Circuit transferred the case to this court pursuant to 28 U.S.C. § 1631. Plaintiff subsequently filed an amended complaint in accordance with RUSCC 84(a)(2) on December 24, 1984.

### III.

■ This court's review of a LEAA decision denying the payment of benefits under the PSOBA is limited to determining "(a) whether there has been substantial compliance with statutory and implementing regulations; (2) whether there has been arbitrary and capricious action on the part of the Government officials involved; and (3) whether there was substantial evidence supporting the decision." *Morrow v. United States*, 227 Ct.Cl. 290, 296, 647 F.2d 1099, 1102, *cert. denied*, 454 U.S. 940, 102 S.Ct. 475, 70 L.Ed.2d 247 (1981) (citation omitted). In this regard, plaintiff alleges that the decision of the LEAA was not supported by substantial evidence. Plaintiff also contends that the LEAA failed to comply with the applicable regulations in arriving at its ultimate conclusions.

In considering plaintiff's allegations, within the context of the court's limited scope of review, the court will primarily focus on whether decedent was acting in the line of duty when he was killed. The LEAA concluded, among other things, that plaintiff did not present sufficient evidence to prove that Tafoya was in fact acting in the line of duty at the time he was shot. *See* 28 C.F.R. § 32.21(b). Plaintiff takes issue with this finding. She asserts that (1) sufficient evidence had been presented to show that Tafoya was acting in the line of duty and (2) if the LEAA had complied with its regulations it would have arrived at the conclusion that Tafoya was acting in the line of duty.

---

transcript dealing with that incident, the court concurs that the LEAA official's conduct was inappropriate. However, since the hearing officer had no knowledge of this attempt to discourage the parents from pursuing their appeal and the hearing actually took place, the court finds the official's conduct to have been harmless. *See Barnett v. United States, supra,* 223 Ct.Cl. at 137, 617 F.2d at 232. *See also Frank L. Black, Jr., Inc. v. United States,* 231 Ct.Cl. 1043 (1982); *Turner v. United States, supra,* 231 Ct.Cl. at 885.

At the hearing before the LEAA, Robert Burkhalter (Burkhalter), a detective for the Denver Police Department testified regarding the findings of the department's homicide investigation after Tafoya's death. Burkhalter was a former homicide investigator who had done some of the work on the investigation of Tafoya's death. Plaintiff relied primarily on Burkhalter's testimony to prove that Tafoya was acting in the line of duty when he was killed.

During his testimony, Burkhalter admitted that the police had found no eyewitnesses to the shooting and had turned up very little concrete evidence as to what occurred. However, based on their observations at the scene on the morning Tafoya was killed and what other little evidence they had acquired, the police developed a scenario of what they felt had occurred. Such a scenario was developed based on the experience of the investigation team.

Burkhalter recounted the events leading up to Tafoya passing out in the El Papa Gallo bar and being assisted to his van. The remainder of Burkhalter's account of what occurred in the early morning hours of February 10, 1980 was based on the Police Department's theory of what occurred. Burkhalter stated that unidentified individuals probably attempted to break into Tafoya's van in which he was sleeping. These individuals were unaware that the van was occupied. Tafoya was awakened by the commotion after approximately an hour of sleep, grabbed his police revolver from the front seat of the van, and chased the individuals trying to get into his van. Tafoya was in full uniform during the incident. Burkhalter admitted that Tafoya was "highly inebriated" (.312 percent blood alcohol level), but he stated Tafoya's ability to handle himself while drinking enabled him to chase the individuals for one and one-half blocks. At that point, Burkhalter theorized, Tafoya confronted the individuals, a scuffle ensued, one of them took his gun, and he was shot three times in the chest. When the shots were fired people nearby were awakened and they saw Tafoya lying in the street and a car leaving the scene. The police were called at around 4:00 a.m. and arrived on the scene shortly thereafter finding Tafoya dead. Whether Tafoya was acting in the line of duty depends on what occurred between the time Tafoya left in his van and the time he was shot.

■ The regulations define "line of duty" as "any action which an officer * * * is obligated or authorized by rule, regulation, condition of employment or service, or law to perform." 28 C.F.R. § 32.2(c). The proper focus in determining whether an officer was acting in the line of duty is on the nature of the acts being performed by the officer at the time of his death. *Harold v. United States*, 225 Ct.Cl. 168, 177–78, 634 F.2d 547, 552 (1980). *See also Howard v. United States*, 229 Ct.Cl. 507, 510 (1981); *Budd v. United States*, 225 Ct.Cl. 725, 727 n. 6 (1980). In discussing the meaning of the term "line of duty", the Court of Claims in *Harold v. United States, supra*, cited a Senate report regarding the PSOBA which stated:

> The term "line of duty" as used in this bill has the *customary usage* that the injury resulting in the officer's death must have occurred when the officer is performing duties authorized, required, or *normally associated with the responsibilities* of such officer acting in his official capacity as a law enforcement officer or fireman. [Emphasis added] [As quoted in 225 Ct.Cl. at 175, 634 F.2d at 551.]

In order to determine the nature of Tafoya's acts when he was shot or to determine if his actions were of the type normally associated with the responsibilities of a police officer, it is necessary to know what happened between the time Tafoya was helped to his van and when he was shot.

■ Plaintiff argues that the testimony presented at the oral hearing clearly shows Tafoya was pursuing criminals when he was killed. Such actions are of the nature of those normally associated with a law enforcement officer. The LEAA Office of General Counsel has opined that moonlighting officers who confront crimes in

progress and attempt to enforce the law should be eligible for benefits. OGC Memorandum dated April 15, 1977. Even if this court were to accept such a view, given the insufficiency of evidence presented here, it could not apply it to the facts in this case. In ruling on the sufficiency of the evidence, the LEAA hearing officer found that the Police Department's theory was based primarily on speculation and conjecture. Despite the experience of the police investigation team which developed the theory on what occurred on the night Tafoya was killed, a review of the record indicates a dearth of facts upon which to support the police conclusion that Tafoya was acting in the line of duty. At this time, the police investigation has turned up little to support the department's theory. Therefore, Burkhalter's account of the events is based primarily on speculation which is inadequate evidence of what occurred.

Plaintiff claims that, if the LEAA had complied with 28 C.F.R. § 32.5, its conclusion regarding whether plaintiff was acting in the line of duty would necessarily have been different. Section 32.5 states:

> The Administration will give substantial weight to the evidence and findings of fact presented by State and local administrative and investigative agencies. The Administration will request additional assistance or conduct its own investigation when it believes that the existing evidence does not provide the Administration a rational basis for a decision on a material element of eligibility.

It is true that the LEAA must give substantial weight to *evidence* and *findings of fact* presented by the Denver Police Department in this case. However, in this case, the "evidence and findings of fact" of the police department regarding the crucial period in question were based almost entirely on speculation and conjecture. This is obviously not the type of credible evidence or "facts" to which the regulation refers. The second sentence of section 32.5 clearly indicates that some evidence presented by local agencies will not provide the LEAA with a rational basis for a decision. This is one of those cases, as was indicated by the initial decision of the LEAA claims officer who stated that plaintiff's claim, while denied, could be reopened at a future date if the Denver Police Department's investigation developed additional evidence. However, the Police Department failed to produce sufficient evidence or facts upon which the Administration could base a rational decision. Therefore, the court concludes that the LEAA's denial of benefits, given the "facts" presented in this case, was in accord with 28 C.F.R. § 32.5. It should be added that 42 U.S.C. § 3796c(b) vests the responsibility for rendering the final determinations regarding benefits in the LEAA. The LEAA weighed the speculative theory proffered by the Denver Police Department and gave it little or no weight. Given the facts in the record, the court is of the view that the LEAA acted in full accord with the regulations.

Plaintiff also pointed out that the Colorado Department of Labor and Employment determined that Tafoya was acting in the line of duty for workers' compensation purposes. Plaintiff contends that the LEAA should give substantial weight to this finding in accordance with 28 C.F.R. § 32.5. It is clear that the "line of duty" provision in the PSOBA is not necessarily as broad as the "scope of employment" standard utilized in state workers' compensation laws. *See* Colo.Rev.Stat. § 8–52–102 (Supp.1983). This court has recognized the distinction between the PSOBA and state workers' compensation laws in *North v. United States*, 1 Cl.Ct. 93, 98, 555 F.Supp. 382, 387 (1982). In *North*, the court stated: "Although differing Workmen's Compensation statutes in a multiplicity of states would under their quite different standards often reach a contrary result, they do not correspond to the specific standards mandated by the Public Safety Officer's [sic] Benefits Act of 1976." *Id.* 1 Cl.Ct. at 98, 555 F.Supp. at 387. Therefore, due to the distinctions between the two statutes, neither the LEAA nor the court need give substantial weight to the findings of the Colorado Department of Labor.

■ Plaintiff also contends that the LEAA failed to comply with 28 C.F.R. § 32.4 which requires the Administration to "resolve any reasonable doubt arising from the circumstances of the officer's death in favor of payment of the death benefit." Plaintiff contends that her theory as to what occurred on the morning of February 10, 1980 is entirely plausible, was developed by experienced police investigators, and created a reasonable doubt as to what occurred. That doubt, plaintiff argues, must be resolved in favor of awarding the death benefits.

The flaw in plaintiff's argument regarding the use of section 32.4 is that in this case there has been insufficient evidence presented on the issue of whether Tafoya was acting in the line of duty to even enable the court or the LEAA to possess a reasoned doubt. Section 32.5 clearly calls for sufficient evidence upon which the LEAA can base a rational decision. Section 32.21(b) of the regulations also indicates that if the claimant (plaintiff) fails to submit sufficient evidence on a material issue or fact that "shall be a basis for determining that the claimant fails to satisfy the conditions required to award a benefit * * *." Therefore, reading these regulatory provisions together, it is clear that plaintiff had the burden of presenting sufficient evidence on the issue of whether Tafoya was acting in the line of duty before plaintiff would be entitled to the benefit of the reasonable doubt provision in section 32.4.

■ In substance, the facts in this case do not involve the question of weighing the sufficiency of the evidence, pro and con, as to "line of duty" issue. There was no probative evidence on that issue in the record. If it was a close question concerning the sufficiency of acceptable evidence presented by plaintiff then she may be entitled to the benefit of the reasonable doubt provision in 28 C.F.R. § 32.4. However, in this case there was no reasonable doubt regarding the sufficiency of the evidence concerning the "line of duty" issue. Plaintiff presented primarily speculation as to what occurred just prior to the shooting. That was properly regarded as clearly insufficient evidence. Where there is no reasonable doubt concerning an issue, plaintiff is not entitled to the benefit of section 32.4. *See Howard v. United States, supra,* 229 Ct.Cl. at 510. *Morrow v. United States, supra,* 227 Ct.Cl. at 296, 647 F.2d at 1103.[6]

---

6. In *Morrow v. United States,* 227 Ct.Cl. 290, 647 F.2d 1099 (1981), the decedent was a fireman who was afflicted with smoke inhalation while fighting a fire. He collapsed from a heart attack the same day and died of a second attack 6 weeks later. The issue was whether the smoke inhalation proximately caused the fireman's death and if so, the claimant was entitled to the death benefits under the PSOBA. The other potential proximate cause of death was a pre-existing heart condition. In what would seem to be a much closer case than the case at bar regarding the causation of the decedent's fatal heart attack, the court found that there was no reasonable doubt based on the evidence that the heart attack was overwhelmingly caused by a pre-existing heart disease. *Id.* 227 Ct.Cl. at 296–97, 647 F.2d at 1103. *See also Russell v. United States,* 231 Ct.Cl. 1022 (1982); *Howard v. United States,* 229 Ct.Cl. 507 (1981); *Smykowski v. United States,* 227 Ct.Cl. 284, 647 F.2d 1103 (1981).

The court in *Howard v. United States, supra,* addressed the application of the reasonable doubt provision and rejected it in a case in which the decedent police officer was killed during a "quick draw" contest. The court found that frivolous gun play was not a personal injury sustained in the line of duty. 229 Ct.Cl. at 510. The court found no basis for reasonable doubt stating in pertinent part:

In any event, that question is for the factfinder, absent a showing of abuse of discretion or absence of substantial evidence to support his findings. Plaintiffs have not met their burden to prove abuse of discretion or lack of substantial evidence. [229 Ct.Cl. at 510.]

This type of deference to LEAA PSOBA determinations further supports the court's conclusion in this case.

In *Smykoski v. United States, supra,* and *Russell v. United States, supra,* reasonable doubt was not addressed but the facts appeared to be more conducive to an application of the reasonable doubt provision than in the case at hand. In both of these cases, the decedent police officers died from heart failure shortly after scuffles with arrestees. The court in both cases found no traumatic injury (as defined in 28 C.F.R. § 32.2(f)) inflicted on the decedents to cause the heart failure. 227 Ct.Cl. at 289, 647 F.2d at 1106; 231 Ct.Cl. at 1024–25. These cases implicitly stand for the proposition that the reasonable doubt regulatory provision (28 C.F.R. § 32.4) must be read in concert with the other

"The regulation does not require that any doubt be resolved in favor of payment" *Howard v. United States, supra,* 229 Ct.Cl. at 510.

Plaintiff's final argument in support of her position that Tafoya was acting in the line of duty when he was killed is that under the Rules and Regulations of the Denver Police Department officers are required to be on duty 24 hours a day. The pertinent rule states:

RR–107  *Always on Duty*

Officers are held to be always on duty, although periodically relieved from the routine performance of it. They are always subject to orders from a supervisory officer and to call from private persons, and the fact that they may be technically off duty shall not relieve them from the responsibility of taking proper police action in any matter coming to their attention. When there is no urgent or immediate need for police action, they may request the dispatcher to turn the matter over to officers on duty in the district, but they shall take such police action as may be required prior to the arrival of the dispatched officers.

Based on this rule and the fact that Tafoya was in uniform at the time of the incident, plaintiff argues that Tafoya was acting in the line of duty when he was killed because he was required to be on duty at all times. The court must reject this broad and expansive argument.

First, the LEAA Office of General Counsel addressed and rejected the same argument in PSOB Opinion 77–5, "Coverage of Off-Duty Public Safety Officer," July 19, 1977. The LEAA stated:

The common law duty a constable may have to act as a police officer 24 hours a day does not justify an award, without some evidence that the officer was in fact acting pursuant to that duty, and not merely as an ordinary citizen.

applicable regulatory provisions. That is the same position taken by the court in this case, *i.e.,* section 32.4 must be read in accordance

Since the LEAA is the agency charged with the administration of the PSOBA, its interpretation of "line of duty" is entitled to great deference. *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). *See also Sea-Land Services, Inc. v. United States,* 204 Ct.Cl. 57, 76, 493 F.2d 1357, 1368, *cert. denied,* 419 U.S. 840, 95 S.Ct. 69, 42 L.Ed.2d 67 (1974). The Supreme Court has stated: "To sustain the Commission's application of this statutory term, we need not find that its construction is the only reasonable one, or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings." *Unemployment Comm'n v. Aragon,* 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136 (1946) (as quoted in *Udall v. Tallman, supra,* 380 U.S. at 16, 85 S.Ct. at 801).

Second, as the court stated earlier, a determination of whether Tafoya was acting in the line of duty depends on the nature of the acts he was performing at the time he was killed. *See Harold v. United States, supra,* 225 Ct.Cl. at 177–78, 634 F.2d at 552; *Budd v. United States, supra,* 225 Ct.Cl. at 727 n. 6. Therefore, the facts that Tafoya may have had his uniform on or that he was held to be always on duty by a Police Department rule are not determinative of whether he was acting in the line of duty. The determinative factor is the nature of his actions, and the LEAA and the court have concluded that plaintiff failed to provide sufficient evidence to show the nature of his actions.

The court concludes that the LEAA's finding that plaintiff did not introduce sufficient evidence on the issue of whether Tafoya was acting in the line of duty was supported by substantial evidence in that the record indicates that at this time plaintiff and the Denver Police Department can only speculate as to what occurred. The LEAA's conclusion regarding the insufficiency of evidence was not arbitrary and capricious, and its decision was in accordance with the pertinent regulations.

with sections 32.5 and 32.21(b) which impose the burden of proof on the claimant as to the material matters at issue.

Therefore, based on this court's limited scope of review, the LEAA's decision denying benefits under the PSOBA to plaintiff must be upheld at this time. For general support for the proposition that failure to introduce sufficient evidence on an issue can lead to a denial of benefits see *North v. United States, supra,* 1 Cl.Ct. at 98, 555 F.Supp. at 387–88.

Having concluded that the LEAA's decision denying benefits should be upheld on the basis of its conclusion that plaintiff failed to introduce sufficient evidence on the issue of whether Tafoya was acting in the line of duty, the court finds it unnecessary to discuss at length the other conclusions of the LEAA hearing officer. However, the court deems it prudent to make a few brief comments relative to said conclusions.

In his decision, the LEAA hearing officer basically concluded that Tafoya could not have assumed duty status and thus have been acting in the line of duty due to his state of intoxication. It is true that a .312 blood-alcohol level indicates a very high degree of intoxication. However, there was testimony in the record that Tafoya could handle his drinking. Burkhalter also testified at the hearing that police officers in Colorado were not to become intoxicated to a point that they rendered themselves unavailable for duty. Tafoya may have been that intoxicated. However, there were not enough facts established to determine Tafoya's ability to act. Burkhalter indicated in his testimony that even an intoxicated police officer has a duty to act. Tafoya may or may not have been able to do so. The court believes that the hearing officer had insufficient facts before him to determine, based solely on intoxication, that Tafoya could not have assumed a duty status. In addition, it may be that, since the proper focus is on the nature of a police officer's acts, actions impaired to a degree by intoxication could be considered of a nature which would constitute actions in the line of duty. That is an open question on this record and one which the court finds unnecessary to answer definitively at this time.

The LEAA hearing officer also concluded that, even if Tafoya could have been considered acting in the line of duty, his voluntary intoxication was the proximate cause of his death which precludes the award of any benefit. 42 U.S.C. § 3796a(2). The LEAA Acting Administrator affirmed this conclusion in his October 15, 1982, letter opinion. The hearing officer pointed out that "proximate" is defined in the regulations as an antecedent event which is a "substantial factor in the result." 28 C.F.R. § 32.2(d). Focusing on the "substantial factor" aspect of this definition the hearing officer stated: "Thus, whether or not the fatal wounds were inflicted by another or officer Tafoya himself, the intoxication would reasonably be a substantial factor in the result, since his condition would enter into his being disarmed by another or his accidently discharging his own gun." (hearing officer's decision pp. 5–6). Such a conclusion is based entirely upon speculation. The hearing officer did not have substantial evidence to support this conclusion and therefore it cannot be upheld. Any conclusion that Tafoya shot himself either intentionally or accidentally in the chest three times appears to the court to be sheer speculation.

It also does not appear that the LEAA hearing officer considered all of the factors listed in 28 C.F.R. § 32.9 before concluding that Tafoya's voluntary intoxication was the proximate cause of his death. Section 32.9 states that "[t]he Administration *will* consider *at least*" (emphasis added) the factors listed in that provision. A review of the record and the hearing officer's decision indicates that he did not consider all of these factors, especially section 32.9(f). If he had considered all the factors, including subpart (f), he should have concluded that he lacked substantial evidence to conclude that Tafoya's intoxication was the proximate cause of his death.

Therefore, the court concludes that the LEAA determinations regarding Tafoya's intoxicated state and his ability to assume duty status or its potential proxi-

mate cause of his death were based on conjecture and speculation and not upon substantial evidence and cannot be upheld. However, the court does uphold the conclusion of the LEAA that plaintiff has failed at this time to meet her burden of proving that Tafoya was acting in the line of duty when he was killed.[7] Absent the introduction of sufficient evidence on this issue, the regulations preclude the award of any benefits under the PSOBA.[8]

The court wishes to emphasize that nothing stated in this opinion is intended to imply that Officer Tafoya was anything but an outstanding police officer. He clearly loved his parents a great deal and worked to provide for them. His death was a tragedy. However, unlike most instances in which law enforcement officers and firemen die tragically, this is an unusual case in that Officer Tafoya's death was and is shrouded in mystery. It is that present mystery which precludes the award of any PSOBA benefits in this case. If the pall of mystery is ever lifted from this tragedy, perhaps at that time PSOBA benefits will be forthcoming to plaintiff.

### IV.

Based on the above discussion, the court upholds the LEAA's denial to plaintiff of

any benefits under the PSOBA. Accordingly, defendant's motion for summary judgment is granted and plaintiff's cross-motion for summary judgment is denied with plaintiff's complaint to be dismissed.

---

7. Plaintiff asserts that the hearing officer solicited an additional medical opinion from a Dr. Spencer after the oral hearing and before he issued his decision on August 19, 1982. Plaintiff asserts that she was denied due process of law because she was unable to rebut or cross-examine Dr. Spencer at any time. Such a solicitation of additional evidence is authorized by 28 C.F.R. § 32.5 though it can possibly be viewed as violative of plaintiff's due process rights. However, in view of the court's upholding of only the LEAA's determination that insufficient evidence had been presented on the issue of whether Tafoya was acting in the line of duty, to which medical evidence would be predominantly irrelevant in this case, the court concludes that the hearing officer's solicitation was at most harmless error which did not prejudice plaintiff. *See Green v. United States,* 222 Ct.Cl. 600, 602, 650 F.2d 285 (1980); *Haynes v. United States,* 190 Ct.Cl. 9, 14–15, 418 F.2d 1380, 1383–84 (1969). *See also Dancy v. United States,* 229 Ct.Cl. 300, 304–05, 668 F.2d 1224, 1226–27 (1982). Furthermore, plaintiff was apprised of the hearing offi-

cer's solicitation of additional medical evidence after he issued his August 19, 1982, decision but before the LEAA Acting Administrator issued his October 15, 1982, decision. Plaintiff was able to obtain the opinion of Dr. George Orgua to rebut Dr. Spencer. Plaintiff submitted Dr. Orgua's opinion to the LEAA Acting Administrator. This opportunity to submit plaintiff's own medical evidence eliminated most, if not all, of any potential prejudice surrounding the hearing officer's solicitation of Dr. Spencer's views.

8. The LEAA claims officer in his December 2, 1981, decision, indicated that the LEAA would be willing to reopen plaintiff's claim at a future date if the Denver Police Department's investigation develops additional evidence regarding whether Tafoya was acting in the line of duty when he was killed. Given the court's conclusion that benefits should be denied solely on the basis of insufficient evidence, the court presumes that the LEAA would be willing to reopen this claim in the future if the circumstances so warranted.