Marvin A. CHACON and Catherine L. Chacon, etc., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 92–715C.

United States Court of Federal Claims.

Feb. 7, 1995.

---

William Stephens, Stephens & Toles, Phoenix, AZ, for plaintiffs.

Patricia Lynn Petty, U.S. Dept. of Justice, Commercial Lit. Branch, Washington, DC, for defendant.

## Opinion [1]

WEINSTEIN, Judge.

Defendant has moved for summary judgment on plaintiffs' claims for benefits under

---

**1.** This opinion originally was filed on January 27, 1994. The decision was affirmed by the Federal Circuit on January 31, 1995, in an opinion that did not address all of the issues discussed herein. *Chacon v. United States*, No. 94–5093, —— F.3d —— (Fed.Cir. Jan. 31, 1995). The January 27, 1994 opinion is being reissued for publication, with minor revisions not affecting the substance of the decision.

the Public Safety Officers' Benefits Act. The motion is granted.

### Background

Plaintiffs Marvin and Catherine Chacon, Johnny and Sally Contreras, Evelyn Bielak, and Ronald and Carol Springfield are the next of kin of, respectively, Joseph Chacon, Alex Contreras, James Ellis, and Curtis Springfield ("decedents"), who died on June 26, 1990, while fighting a large forest fire. Decedents were members of a fire suppression crew made up of Arizona state prison inmates.

Plaintiffs filed claims for death benefits with the Bureau of Justice Assistance ("BJA") of the United States Department of Justice. BJA administers the Public Safety Officers' Benefits Program, pursuant to the Public Safety Officers' Benefits Act, 42 U.S.C. §§ 3796–96c ("the Act"). In November 1991, the claims were denied on the grounds that decedents were not public safety officers covered by the Act.

Plaintiffs appealed this decision. They presented the following evidence at the hearing:

Dale Copeland, warden of the prison in which decedents were incarcerated, testified that all state prison inmates were required to engage in some employment or gainful activity, but that service on the fire suppression detail was voluntary. Those inmates who volunteered and were accepted received specific training and were issued special equipment.

Plaintiff Sally Contreras testified that, at the invitation of the Federal Emergency Management Administration, she attended the Memorial Service for Fallen Firefighters on October 13, 1991, and that the decedents' names are included on the National Fallen Firefighters Memorial.

Plaintiff Carol Springfield testified that the Governor of Arizona had issued a posthumous pardon to each decedent. (Copies of the pardons were entered into the record.)

A letter from Arizona Assistant Attorney General Richard Albrecht to M. Kathleen Greene of the BJA was taken into evidence. Greene had asked whether the State of Arizona believed that the decedents qualified for benefits under the Act. Albrecht responded, "[W]e believe that the inmates were indeed serving a public agency in a public capacity. The inmates were authorized and trained to serve as firefighters on behalf of the State Land Department pursuant to an Intergovernmental Agreement with the Department of Corrections."

On June 25, 1992, the hearing officer upheld the initial agency determination denying the claims.

Plaintiffs sought review of this decision, and submitted an additional affidavit from Mr. Copeland that reiterated his hearing testimony that the decedents were acting as officers of the Department of Corrections, pursuant to the agreement with the State Land Department, and also stated that the inmate fire suppression crew was a legally organized volunteer fire department. On August 25, 1992, the Acting Director of the BJA issued a final decision denying the claims, on the grounds that decedents were not public safety officers within the terms of the Act.

On October 14, 1992, plaintiffs filed suit in this court, alleging that this decision was arbitrary and capricious, and not supported by substantial evidence.

### Discussion

The Act provides for the payment of $100,-000 to the survivors of "a public safety officer [who] died as the direct and proximate result of a personal injury sustained in the line of duty." 42 U.S.C. § 3796(a); *see also* 28 C.F.R. § 32.1. "Public safety officer" is defined as "an individual serving a public agency in an official capacity, with or without compensation, as a law enforcement officer, [or] firefighter...." 42 U.S.C. § 3796b(7); *see also* 28 C.F.R. § 32.2(j). "Firefighter" is further defined to mean "an individual serving as an officially recognized or designated member of a legally organized volunteer fire department." 42 U.S.C. § 3796b(3); *see also* 28 C.F.R. § 32.2(n).

Thus, to recover, plaintiffs must show that decedents served a public agency in an official capacity and were official members of a legally organized volunteer fire department.[2]

■ Judicial review of BJA denials of death benefits is limited to three inquiries: 1) whether there was substantial compliance with the statute and regulations; 2) whether the government officials involved acted arbitrarily or capriciously; and 3) whether the decision was supported by substantial evidence. *Morrow v. United States,* 647 F.2d 1099, 1102, 227 Ct.Cl. 290, *cert. denied,* 454 U.S. 940, 102 S.Ct. 475, 70 L.Ed.2d 247 (1981); *Cartwright v. United States,* 16 Cl. Ct. 238, 239 (1989); *Durco v. United States,* 14 Cl.Ct. 424, 427 (1988).

*Substantial compliance*

■ Plaintiffs argue that, by not accepting the conclusions of Warden Copeland and Assistant Attorney General Albrecht, the decision violated 28 C.F.R. § 32.5, which requires BJA to "give substantial weight to the evidence and findings of fact presented by State, local, and Federal administrative and investigative agencies." The statements in question, however, consisted of legal conclusions rather than factual findings, and the regulation does not apply to such conclusions. *See Tafoya v. United States,* 8 Cl.Ct. 256, 263 (1985).

*Arbitrary and capricious*

Congress authorized BJA to interpret and administer the Act, *see* 42 U.S.C. § 3796c, which balances "compensating for inadequate state and local benefits ... [with] budgetary considerations and ... fears that federal assumption of full responsibility for compensating the families of deceased officers would weaken the federal system and allow states and municipalities to evade their responsibility." *Russell v. Law Enforcement Assistance Admin.,* 637 F.2d 1255, 1261 (9th Cir.1980); *see also id.* (because of these considerations, Congress adopted only "a limited program").

■ When, as here, a statute does not address a specific legal issue, "the question

for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). This deference is particularly appropriate for "an executive department's construction of a statutory scheme it is entrusted to administer," when the decision " 'involved reconciling conflicting policies.' " *Id.* at 844, 104 S.Ct. at 2782 (quoting *United States v. Shimer,* 367 U.S. 374, 382, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961)).

■ The court finds that the Acting Director's interpretation of the Act as excluding these decedents was reasonable.

"In order to ascertain the standard established by the Benefits Act it is necessary to understand the purposes Congress sought to promote by it." *Russell v. Law Enforcement Assistance Admin.,* 637 F.2d at 1261.

Upon the introduction of S. 2572, Senator Thurmond stated:

> ... Law enforcement careers must be made more acceptable to our qualified citizens. We cannot ask decent, hardworking men to face the constant risk of death in the line of duty and then ignore their rightful request that their families be protected from financial calamity.
>
> . . . .
>
> The dedicated public safety officer is concerned about the security of his family, and to provide the assurance of a Federal death benefit to his survivors is a very minor recognition of the value our government places on the work of this dedicated group of public servants.

S.Rep. No. 816, 94th Cong., 2d Sess. 3–4 (quoting 121 Cong.Rec. 518716 (daily ed. Oct. 28, 1975)), *reprinted in* 1976 U.S.Code Cong. & Admin.News 2504, 2505 (footnote omitted).

The conclusion that decedents were not "serving a public agency in an official capacity," 42 U.S.C. § 3796b(7), was reasonable. BJA interprets section 3796b(7) to require that a claimant be "an officer, employee, volunteer, or [in a] similar relationship of

---

2. Plaintiffs do not contend that decedents served as members of the other categories enumerated

under 42 U.S.C. § 3796b(7) (*e.g.,* law enforcement officers).

performing services as a part of a public agency. To have such a relationship with a public agency, an individual must be officially recognized or designated as functionally within or part of the public agency." Office of Judicial Assistance, Research, and Statistics, U.S. Dep't of Justice, *Legal Interpretations of the Public Safety Officers' Benefits Act* 9 (1981) (summarizing *Holstine v. Law Enforcement Assistance Admin.*, PSOB No. 78–338 (B.J.A. July 8, 1980), *aff'd without op.*, No. 80–7477, 688 F.2d 846 (9th Cir. Aug. 4, 1982)).

BJA could reasonably conclude that decedents were not in such a relationship with the Land Department, based on its prior (also reasonable) holding that one who works for a government contractor does not thereby acquire the requisite relationship to the contracting agency. *Id.* Decedents' relationship with the Arizona Land Department was based solely on the agreement between the Land Department and the Department of Corrections.

Nor were decedents recognized as employees, officials, or volunteers of or for the Arizona Department of Corrections. Indeed, the opposite is true: Arizona law provides that "[n]o prisoner ... shall be considered as an employee or to be employed by the state or the department of corrections." Ariz.Rev.Stat.Ann. § 31–254(J); *see also* Ariz.Rev.Stat.Ann. § 31–251(E). Moreover, it would be inappropriate to find prison inmates, who are involuntarily committed to the custody and control of the Department of Corrections for punishment for their crimes, to be officers serving that agency or to be "volunteering" service to the agency.[3]

The determination that decedents were not part of "a legally organized volunteer fire department," 42 U.S.C. § 3796b(3), also is

reasonable. First, properly considered, decedents were not volunteers. As required by statute and the intergovernmental agreement, they were paid for their services. Ariz.Rev.Stat.Ann. § 31–254(A); App. 20. Moreover, decedents were required to perform gainful activity during their incarceration; while the choice to join the fire suppression detail was termed "voluntary," serving on *some* detail was mandatory. Ariz. Rev.Stat.Ann. § 31–251 (1986); App. 18.

Second, even if decedents were volunteers, the fire suppression detail was not "a legally organized volunteer fire department." The only volunteer fire departments for which Arizona law provides are volunteer fire companies in volunteer fire districts established by county election. *See Mountain States Legal Found. v. Apache County*, 146 Ariz. 479, 706 P.2d 1246, 1249–50 & n. 6 (App. 1985); Ariz.Rev.Stat.Ann. §§ 48–802 to –812. The phrase "legally organized" in the Act means something more than "permissible" or "not illegal"; it requires the volunteer fire department to have been created pursuant to state or local law. *Cf. Black's Law Dictionary* 893–94 (6th ed. 1990) (defining "legal entity" as one with "sufficient existence in legal contemplation that it can function legally, be sued or sue and make decisions through agents as in the case of corporations"). This detail was at best a unit within the Department of Corrections, and plaintiffs have cited no state or local statute or law providing for the incorporation, association, or organization of such an entity. To interpret § 3796b(3) as including the fire suppression detail would render the phrase "legally organized" meaningless, a result this court must seek to avoid. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34–36, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992); *Reiter v.*

---

**3.** Plaintiffs contend that decedents should not be considered to have been prison inmates, because they received posthumous pardons. The court disagrees. As the hearing officer stated, "[t]he pardon from Governor Rose Mofford, while posthumously restoring the inmates' civil rights, does not, for the purposes of this program, change the circumstances of their deaths." App. 12; *see also, e.g.,* 59 Am.Jur.2d *Pardon & Parole* § 50 (1987) ("A pardon does not, however, make amends for the past. It affords no relief for what has been suffered by the offender in his person

by imprisonment, forced labor, or otherwise, and it does not give, nor does it impose upon the government any obligation to give, compensation for what has been done or suffered.... Executive clemency does not eliminate the fact of conviction; it merely results in ending further punishment for the offense of which the person pardoned was convicted."). A pardon does not revise historical facts; it merely eliminates certain future punishments that might otherwise be imposed on the pardoned individual as a result of those facts.

*Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979).

Finally, it is not clear that the fire suppression detail was a "fire department" at all. A fire department is generally thought of as a unit within a municipality formed to provide the area with firefighting services, *see* 62 C.J.S. *Municipal Corporations* § 591 (1949 & supp. 1993), but the detail was formed as much to implement the "gainful activity" requirement as it was to fight fires, App. 18. Also, as the Acting Director noted,

> the provisions of the [intergovernmental agreement] which provided for a strict measure of control over offender-firefighters in such matters as forbidding the exchange of goods or monies, the use of alcoholic beverages or drugs, or even the visiting by unauthorized persons, make it clear this was not an ordinary civilian firefighting organization.

App. 4–5.

In short, interpreting the Act to exclude inmate firefighters is a permissible construction.

*Substantial evidence*

The "substantial evidence" test applies only to the review of factual findings, not to legal conclusions. 5 Kenneth C. Davis, *Administrative Law Treatise* §§ 29:5, :7 (2nd ed. 1984). Because plaintiffs do not challenge the BJA's factual findings, only its application of the law to those findings, this inquiry is not called for.

*Conclusion*

For the reasons stated above, defendant's motion for summary judgment is granted. The Clerk shall enter judgment in favor of the defendant.