Laureen M. DAVIS and Zachary
A. Davis, her minor son,
Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 99–471C.

United States Court of Federal Claims.

March 31, 2000.

Richard C. Tallman, Seattle, WA, for plaintiffs.

Kyle E. Chadwick, with whom were David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, James M. Kinsella, Assistant Director, United States Department of Justice, Washington, DC, for defendant. Gregory C. Brady and Lila S. Sultan, Office of Justice Programs, of counsel.

## OPINION AND ORDER

HEWITT, Judge.

This matter comes before the court on the parties' cross-motions for summary judgment pursuant to Rule 56 of the Rules of the Court

of Federal Claims (RCFC). Plaintiffs assert that they are entitled to compensation under the Public Safety Officers' Benefits Act, 42 U.S.C. § 3796 (1994) (PSOBA or the Act), and that the United States Department of Justice, Bureau of Justice Assistance (BJA), erred in denying their claim.

The PSOBA provides for the payment of a death benefit of $100,000 to the surviving spouse and children of a public safety officer who has "died as the direct and proximate result of a personal injury sustained in the line of duty...." 42 U.S.C. § 3796(a) (1994).

In their Motion for Summary Judgment (Plaintiffs' Motion), plaintiffs assert that the BJA failed substantially to comply with the PSOBA and its implementing regulations. Plaintiffs' Motion at 2–3. Plaintiffs also allege that the BJA's findings were not supported by substantial evidence. *Id.*

Defendant asserts, in its Response to Motion for Summary Judgment and Defendant's Cross–Motion for Summary Judgment (Defendant's Motion), that the BJA's determination was lawful and supported by substantial evidence. Defendant's Motion at 9. For the following reasons, the court REMANDS the matter to the BJA Hearing Officer for reconsideration in light of the court's interpretation of the PSOBA's legislative history and implementing regulations.

## I. Background

### A. Statement of the Case

The following undisputed facts are taken from Defendant's Motion filed with this court on November 18, 1999, and the record submitted by the claimants before the Ninth Circuit Court of Appeals (Claimants' Exhibits).

Seattle Police Officer Kenneth L. Davis was ordered to leave work early on May 11, 1995, in order to make up for uncompensated overtime he had accrued. Officer Davis left the police station in his personal vehicle shortly after 1:00 a.m. His shift officially ended at 1:30 a.m.

At approximately 1:12 a.m., Officer Davis's vehicle was struck at an intersection by a Corvette driven by Robert Duane Knowles. The Corvette ran a stop sign at a high rate of speed and crashed into the front of Officer Davis's vehicle, spinning the officer's vehicle and throwing the officer into the street. Officer Davis's injuries were fatal.

Moments before the crash, Knowles had been stopped by a state trooper for erratic driving. When the trooper exited his vehicle and began to approach Knowles's Corvette, Knowles drove away. The trooper got back into his vehicle and began to pursue Knowles but soon decided to end pursuit because of the possible hazard to third parties. Several blocks beyond where he had ended the pursuit, the trooper came upon the crash scene.

Witnesses state that Knowles got out of the Corvette after the crash and ran away from the intersection. Knowles was tracked down by a police K–9 unit and apprehended a short time later. On December 14, 1995, a Washington State Superior Court jury found Knowles guilty of Second Degree Murder, Vehicular Homicide, and Hit and Run in connection with the crash. Knowles was also found guilty of Violation of the Uniform Controlled Substances Act—Possession of Cocaine as a result of evidence found in the Corvette after the crash.

On September 8, 1995, Officer Davis's widow applied for benefits under the PSOBA on behalf of herself and her son. The Davis' claim was denied by the Department of Justice, Bureau of Justice Assistance on March 15, 1996. That denial was appealed to the agency hearing officer (Hearing Officer).

Following a hearing on the matter on August 15–16, 1996, the Hearing Officer upheld the decision of the BJA for the reason that Officer Davis's death did not occur "in the line of duty" within the meaning of the PSOBA. Claimants' Exhibits at ER 00523–32. In a decision issued on September 27, 1997, the Hearing Officer also stated that evidence was missing on a material issue—"whether Officer Davis was aware that Knowles was fleeing an officer or observed his dangerous driving and was acting to intervene in a law enforcement capacity...." *Id.* at ER 00530.

Plaintiffs appealed the Hearing Officer's decision to the United States Court of Appeals for the Ninth Circuit. On March 5, 1999, the Ninth Circuit determined that it did not have jurisdiction over the matter and transferred the case to the United States Court of Federal Claims. *See Davis v. United States,* 169 F.3d 1196 (9th Cir.1999). *See generally Wydra v. Law Enforcement Assistance Admin.,* 722 F.2d 834, 839–40 (D.C.Cir. 1983) (discussing the jurisdiction of the circuit courts and Claims Court[1] over claims brought under the PSOBA).

### B. Standard of Review

Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See* RCFC 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Jay v. Secretary of Health and Human Servs.,* 998 F.2d 979, 982 (Fed.Cir.1993). The fact that both parties have moved for summary judgment does not relieve the court of its responsibility to determine the appropriateness of summary disposition. *See Prineville Sawmill Co. v. United States,* 859 F.2d 905, 911 (Fed.Cir.1988).

A fact is material if it might affect the outcome of the suit under governing law. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Determining which facts might affect the outcome of the suit depends on the substantive law that applies to the case. *See H.B. Zachry Co. v. United States,* 28 Fed.Cl. 77, 80 (1993), *aff'd,* 17 F.3d 1443 (Fed.Cir. 1994). The court must resolve any doubts about factual issues in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefits of all favorable inferences and pre-sumptions run. *See H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir. 1984).

Upon an evaluation of the record in this case, the court determines that the case is not ripe for summary judgment disposition. The court may not, however, conduct a de novo review of a case brought under the PSOBA. *See Durco v. United States,* 14 Cl.Ct. 424, 427 (Cl.Ct.1988). When reviewing agency action based on an agency's own regulations, federal courts must first determine whether Congress has addressed the issue in question. *See Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *see also Yanco v. United States,* 45 Fed.Cl. 782, 787 (2000). Under the *Chevron* analysis, if Congress has not expressed its intention on a particular matter, the court must give "substantial deference" to the agency's interpretation of Congress's intent, as long as the agency's interpretation is based on a "permissible construction of the statute." *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778. However, if it appears that Congress has spoken directly to the issue in question, the agency and the court must give effect to the unambiguously expressed intent of Congress. *Id.*

This court's review of the BJA's denial of benefits is limited to determining (1) whether there has been substantial compliance with the statute and implementing regulations;[2] (2) whether there has been arbitrary and capricious action on the part of the government officials involved; and (3) whether there was substantial evidence supporting the decision. *See Morrow v. United States,* 227 Ct.Cl. 290, 647 F.2d 1099, 1102 (1981); *see also Chacon v. United States,* 32 Fed.Cl. 684, 687 (1995), *aff'd* 48 F.3d 508 (Fed.Cir. 1995); *Cartwright v. United States,* 16 Cl.Ct. 238, 239 (1989); *Tafoya v. United States,* 8

---

**1.** This court's name was changed from the "Claims Court" to the "Court of Federal Claims" in 1992 by the Federal Courts Administration Act of 1992, Pub.L. No. 105–572, 106 Stat. 4506 (1992).

**2.** Pursuant to statutory direction, the BJA promulgated regulations to carry out the purposes of the Act. *See* 42 U.S.C. § 3796(a); 28 C.F.R. § 32.1–32.24 (1999). According to the relevant regulation, "line of duty" means "[a]ny action which an officer whose primary function is crime control or reduction, [or] enforcement of the criminal law ... is obligated or authorized by rule, regulations, condition of employment or service, or law to perform, including those social, ceremonial, or athletic functions to which the officer is assigned, or for which the officer is compensated, by the public agency he serves." 28 C.F.R. § 32.2(c)(1).

Cl.Ct. 256, 261 (1985). Because the court is unable, on this record, to determine whether or not the Hearing Officer's decision was in substantial compliance with the statute and implementing regulations, the court remands the case to the Hearing Officer for reconsideration.

## II. Discussion

The Hearing Officer's decision relies on two legal interpretations which the court believes to be erroneous. The source of the first error is a footnote in the unpublished decision of the Court of Claims in *Budd v. United States,* 225 Ct.Cl. 725, 650 F.2d 290, 1980 WL 99770 (1980), which is quoted by the Hearing Officer and affects the Hearing Officer's interpretation of the statutory term, "line of duty."[3] The second error, which seems to flow at least in part from the erroneous interpretation of the term "line of duty," appears in the Hearing Officer's treatment of the concept of "reasonable doubt" in evaluating evidence regarding Officer Davis's awareness of the circumstances surrounding the crash.

### A. Line of Duty

▇ The PSOBA provides for the payment of a death benefit of $100,000 to the surviving spouse and children of a public safety officer who has "died as the direct and proximate result of a personal injury sustained in the line of duty...." 42 U.S.C. § 3796(a).

Notwithstanding the broad statutory directive that death occur as the "result of a personal injury sustained in the line of duty," the Hearing Officer's analysis relies on the view that an officer must be engaged in a *"specific* line of duty *action"* (emphasis add-

ed). Claimants' Exhibits at ER 00529. For this view, the Hearing Officer quotes and relies on footnote 6 in the non-precedential *Budd* decision, as follows:

> Regarding actions for which an officer is compensated, eligibility for benefits under the PSOB Act does not turn on whether the officer is simply receiving compensation at the time of his death. The officer must be engaged in a specific line of duty action. See Initial Agency Determination, Davis Case, # 95–214, where the question of eligibility turns on whether the specific activity causing death was an inherent part of the employment of the officer. The agency determination cites *Budd v. U.S.,* 650 F.2d 290 (Ct.Cl, (sic) 1980), in which the Court noted that the PSOB Act's definition of line of duty,
>
> > "...requires more than that death occur while an officer is at work. Rather, eligibility for benefits turns on whether the specific activity causing death was an inherent part of employment of an officer. Thus the death must be 'authorized, required, or normally associated with' an officer's law enforcement duties as interpretive regulation requires." See note 6.

The initial agency determination is supported by the evidence; that although Officer Davis was in uniform and authorized to use one-half hour of compensatory time, he was only returning home in his personal vehicle when he was involved in a traffic accident and killed. There is no evidence to support a finding other than that Officer Davis' accident and death were not the direct and proximate result of a specific line of duty action that he was authorized or obligated to perform by law, rule, regu-

---

3. *Budd* was decided by order without a published opinion. RCFC 52.1 states, "Unpublished opinions and orders of the court are binding on the parties, but have no precedential effect. Opinions and orders designated as unpublished shall not be employed as authority by this court and may not be cited by counsel as authority, except in support of a claim of res judicata, collateral estoppel, or law of the case." RCFC 52.1(a) (The Court of Federal Claims, formerly the Claims Court (*see supra* note 1), is the successor of the original jurisdiction of the Court of Claims pursuant to the Federal Courts Improvement Act of 1982, 28 U.S.C. § 171 (1994) (Act of 1982). Ref-

erence is made to the Court of Federal Claims rule because a comparable rule did not exist in the Rules of the Court of Claims. The Act of 1982 also established the Court of Appeals for the Federal Circuit. The Court of Appeals for the Federal Circuit Rule 47.6(b) states, in effect, the same thing as RCFC 52.1.). Although *Budd* has been designated as unpublished, it was relied upon by the BJA and the Hearing Officer in their decisions. *See* Claimants' Exhibits at ER 00514–15, 00524–25, 00529. The court cites it here to address the BJA and Hearing Officer's applications of *Budd.*

lation, or condition of employment. Evidence submitted to the agency for the initial determination and upon appeal speaks to Officer Davis' death as a tragic accident, but not one that meets PSOB standards for award of death benefits to claimants.

*Id.*

The critical defect in the quoted portion of *Budd* footnote 6 is its reliance on language from Senate Report 94–816 (1976), which accompanied a superseded version of the bill containing a more limited version of the "line of duty" language than the language ultimately adopted in the statute. Although footnote 6 correctly quotes the Conference Report that the PSOBA covers "all acts performed by the public safety officer in the discharge of those duties which are required of him in his capacity as a law enforcement officer," the gloss it puts on those general words is more restrictive than either the Conference Report or the text of the PSO-BA. This is because the gloss—that "the death must be 'authorized, required, or normally associated with' an officer's law enforcement duties"—is in fact the text of the Senate report interpreting the *superseded* bill. The Court believes that there is a significant difference in meaning between the words of the PSOBA as enacted and the words of the superseded Senate bill. That difference is the broadening by Congress of the scope of the term "line of duty" in enacting the final amendments to the statute. The Congressional intent to broaden the scope of the term "line of duty" is lost when Senate Report 94–816 is mistakenly permitted to provide the interpretive gloss for the term "line of duty" in the PSOBA.

Next to the plain language of the statute, the legislative history is the best indicator of what types of deaths Congress intended to cover when it enacted the PSOBA. *See* 2A Norman J. Singer, *Sutherland Statutory Construction* § 48.04 (5th ed.1992) (citing *United States v. Universal C.I.T. Corp.,* 344 U.S. 218, 220, 73 S.Ct. 227, 97 L.Ed. 260 (1952)). Within the legislative history, "the conference report represents the final statement of terms agreed to by both houses of Congress" and is therefore regarded as "the most persuasive evidence of congressional intent." *Id.* at § 48.08.

In the Conference Report, the managers pointed out two possible interpretations of the scope of "line of duty," noting that the House bill had limited "line of duty" to certain hazardous police duties:

> The House bill authorized payment if the public safety officer's death was the result of a personal injury sustained in the line of certain hazardous duties which are specified in the bill. Such duties included: apprehending or guarding criminals; preventing crime; and other activities determined by the Law Enforcement Assistance Administration to be potentially dangerous....

H.R. Conf. Rep. No. 94–1501, at 5 (1976). By contrast, the Conference Report continues, the Senate had enacted an amendment to broaden the definition to include "all line of duty deaths." *Id.* The Conference Report concludes by expressing the conviction that " 'line of duty' is a well established concept ... cover[ing] ... all acts performed by the public safety officer in the discharge of those duties which are required of him in his capacity as a law enforcement officer...." *Id.* at 6. In order to discern fully and accurately what Congress eventually enacted, it is necessary to examine the superseded language and the Senate floor discussion on the final amendments to the legislation.

The Senate's original "line of duty" language, which is the subject of Senate Report 94–816, provided, "In any case in which the Administration determines ... that a public safety officer has died in the line of duty from injuries directly and proximately caused by a criminal act or an apparent criminal act, the Administration shall pay a benefit...." S.Rep. No. 94–816, at 1 (1976). During Senate floor discussion following the issuance of Senate Report 94–816, an amendment to the Senate bill was agreed upon which is now the text of the statute on "line of duty." *See* 122 Cong. Rec. 22,643–45 (1976). The new language broadened the scope of the bill's coverage from death from injuries "caused by a criminal act" to death from "injury sustained in the line of duty." In support of the

amendment, Senator McClellan[4] asked the Senate to consider several hypothetical circumstances that could result in injury and death but would be viewed not as resulting from hazardous duties, but rather from being on duty at all, including even necessary breaks. *Id.* at 22,644–45. Senator McClellan stated:

> When an officer is in a police station and decides to walk across the street for lunch, would it be a potentially dangerous activity if he becomes the target of an assault or is run over by a car? If he is sitting at his desk making out a report or performing office duties, and someone who has been offended by him walks in and shoots him, is he doing a potentially dangerous job at the moment?

122 Cong. Rec. 22,645. Senator McClellan's view was that injuries arising in all duty circumstances should be covered. *Id.* In support of the same broad view of duty,

Senator Thurmond stated, "As the bill came from the committee, a man would have to be killed as a result of a criminal act or an apparent criminal act for recovery to be had. As it is now amended, recovery could be had or the award could be granted if a person were injured in the line of duty." *Id.* Based on the foregoing, the court believes that the term "line of duty" in the PSOBA as enacted is much closer to the term "on duty" than to the phrase used by the Hearing Officer— engaged in a "specific line of duty action." *See* Claimants' Exhibits at ER 00529.

Based on the text of the PSOBA, the Conference Report and the remarks on the Senate floor by the bill's sponsors and proponents of the final, broadening amendment, the court finds that the Hearing Officer's view, based on the non-precedential *Budd* footnote 6, that Officer Davis was required to be engaged in a "specific line of duty action," is erroneous.[5]

---

4. Senator McClellan was an original sponsor of the bill. *See* 122 Cong. Rec. 22,634. Senator Moss was the sponsor of the amendment which changed the "line of duty" language. *Id.* at 22,643. Senator Thurmond joined him as a co-sponsor. *Id.* at 22,644. The propriety of relying on language used by members of Congress during floor debate or discourse has been questioned, especially in the context of interpreting remarks of opponents of legislation. *See* 2A Norman J. Singer, *Sutherland Statutory Construction* § 48.13 (5th ed.1992) (citing *Shell Oil Co. v. Iowa Dep't of Revenue*, 488 U.S. 19, 109 S.Ct. 278, 102 L.Ed.2d 186 (1988)). However, the Supreme Court has stated that "[i]t is the sponsors that we look to when the meaning of the statutory words is in doubt." *National Woodwork Mfrs. Assoc. v. NLRB*, 386 U.S. 612, 640, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967). The court, therefore, finds the comments made by Senators McClellan, Moss, and Thurmond to be particularly helpful to the court's interpretation of the Act.

5. The BJA and Hearing Officer's decisions both apply a three-part test that is said to be contained in *Russell v. Law Enforcement Assistance Admin.*, 637 F.2d 1255 (9th Cir.1980), providing that a police officer who is coming or going from work is not covered by the PSOBA "unless he is: (1) driving his employer's vehicle; or, (2) responding to a specific emergency ... or, (3) required by his employer to use his personal vehicle at work." Claimants' Exhibits at ER 00514, 00530. As an initial matter, the fact that the Ninth Circuit, in transferring this matter to this court in *Davis v. United States*, 169 F.3d 1196, 1200 (9th Cir.1999), determined that the *Russell* court

lacked jurisdiction to decide BJA decisions under the PSOBA detracts from any precedential value *Russell* may have. *See Yanco v. United States*, 45 Fed.Cl. 782, 791 (2000). We also note that no such three-part test as described in the BJA and Hearing Officer's decisions was either adopted or applied by the Ninth Circuit in *Russell*. The Ninth Circuit first provides a scholarly summary of the "going and coming rule," quoting, in summary, a 1975 Michigan authority for the proposition that the "going and coming rule" had become "riddled with exceptions" and "has evolved into a new rule which compensates injury where there is a sufficient nexus between the employment and the injury to conclude that it was a circumstance of employment." *Russell*, 637 F.2d at 1265 (internal quotations and citation omitted). The *Russell* court then applied a test similar to that described by the Michigan court and concluded that, because the plaintiff's decedent "was engaging in a job-related activity at the time of his death," his death had occurred "in the line of duty." *Id.* at 1266.

The evidence considered by the court in *Russell* in finding a line of duty death is, in fact, quite similar to evidence offered by plaintiffs here, including evidence that Officer Davis did on occasion use his personal vehicle for police business, evidence indicating that Officer Davis always carried all of his police equipment in his personal vehicle in order to be prepared at all times to take police action if necessary (9th Cir. Brief at 6–7) as well as the fact that Officer Davis was in transit from work in furtherance of an administrative decision to assign compensatory time. *Compare Russell*, 637 F.2d at 1265–66.

## B. Reasonable Doubt

■ The parties raised before the Hearing Officer and this court the issue of whether or not reasonable doubt surrounding the circumstances of Officer Davis's death should be resolved in favor of the payment of a death benefit. Part 32.4 of title 28 of the Code of Federal Regulations states, "The Bureau shall resolve any reasonable doubt arising from the circumstances of the officer's death or permanent and total disability in favor of payment of the death or disability benefit." 28 C.F.R. § 32.4 (1999). The issue to which the Hearing Officer applied the reasonable doubt standard was "whether Officer Davis was aware that Knowles was fleeing an officer or observed his dangerous driving and was acting to intervene in a law enforcement capacity at the time of the tragic fatal collision." Claimants' Exhibits at ER 00530.

In the administrative proceeding before the Hearing Officer, plaintiffs argued that "[n]o one will ever be able to prove what actually occurred in those last moments before the collision. Under such circumstances, 28 C.F.R. § 32.4 (1995) requires that any doubt as to Officer Davis' status at the time of the collision must be resolved in favor of payment of the death benefit to his widow and minor son." Claimants' Exhibits at ER 00530. The Hearing Officer framed the issue differently—to import, in effect, a requirement that Officer Davis knowingly be engaged in a specific law enforcement activity:

> In this case, a material issue is whether Officer Davis was aware that Knowles was fleeing an officer or observed his dangerous driving and was acting to intervene in a law enforcement capacity at the time of the tragic fatal collision.

*Id.*

In applying 28 C.F.R. 32.4, the Hearing Officer cited *Tafoya v. United States,* 8 Cl. Ct. 256 (1985), for the proposition that "allegations of material facts based on speculation

are inadequate to satisfy a claimant's burden of proof under the Act." Claimants' Exhibits at ER 00531 (citing *Tafoya,* 8 Cl.Ct. at 262–63).[6] The Hearing Officer also asserted that the "BJA is not required to resolve any reasonable doubt arising from the circumstance of Officer Davis' death in favor of the death benefit where, as in this case, evidence on a material issue is lacking." *Id.* at ER 00532.

The difficulty with the Hearing Officer's analysis is that there is nothing in the PSOBA that would have required Officer Davis to be aware of or in fact to be "acting to intervene in a law enforcement capacity" at the time of the accident. Whether or not Officer Davis's actions (actions which did in fact result in the apprehension of Robert Knowles) were purposeful or intentional is irrelevant to a determination of whether Officer Davis was acting "in the line of duty." To find otherwise requires an interpretation of the PSOBA that is inconsistent with the text of the statute, the legislative history and the agency's own regulations.

## III. Conclusion

### A. Order of Remand

Section 1491(a)(2) of Title 28 of the United States Code provides in pertinent part, "In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just." 28 U.S.C. § 1491(a)(2) (1994). Furthermore, RCFC 60.1 provides in pertinent part:

> (a) Remand. (1) *Issuance of Remand Order.* At the request of a party or on its own motion, the court may in any case within its jurisdiction by order remand appropriate matters to any administrative or executive body or official with such direction as may be deemed proper and just.
>
> (2) *Content of Remand Order.* An order of remand shall (A) delineate the area of

---

6. This case is wholly distinguishable from *Tafoya.* The officer in *Tafoya* was off-duty and the circumstances surrounding his death were completely unknown. In the present case, there is no dispute regarding Officer Davis's duty status at the time of his death. He was receiving pay for uncompensated overtime at the time of his collision with Knowles. Defendant's Motion at 4–5; Plaintiffs' Amended Complaint (Complaint) at ¶ 8. Furthermore, the cause of Officer Davis's death is certain. Defendant's Motion at 5; Complaint at ¶ 5.

further consideration or action deemed warranted on the remand, and (B) fix the extent to which, and the duration of the period, not to exceed 6 months, during which the court proceedings shall be stayed....

(5) *Advice of Administrative Action.* In every case in which an order of remand is entered pursuant to this rule, the attorney of record for the party so designated in the order of remand shall report to the court that status of proceedings on remand at intervals of 90 days or less, beginning with the date of the order.

RCFC 60.1(a).

Pursuant to 28 U.S.C. § 1491(a)(2) and RCFC 60.1(a), this matter is hereby remanded to the BJA Hearing Officer. The Hearing Officer shall make a determination of plaintiffs' eligibility for compensation under the PSOBA consistent with the PSOBA and its implementing regulations, as interpreted by the foregoing analysis of the legislative history regarding "line of duty" and the related discussion of reasonable doubt. The Hearing Officer's determination regarding plaintiffs' eligibility for compensation shall be filed with this court on or before Tuesday, May 23, 2000. RCFC 60.1(b)(3). Pursuant to RCFC 60.1(a)(5), defendant shall file a status report on Monday, May 1, 2000.

B. Disposition of Summary Judgment Motion

A determination on the parties' motions for summary judgment shall be withheld until the court receives the Hearing Officer's determination on remand.

C. Suspension of Court Proceedings

This matter shall be SUSPENDED until the court receives the Hearing Officer's determination. Within 30 days after the filing of the Hearing Officer's decision, the parties shall file the notice set forth in RCFC 60.1(b)(4).

IT IS SO ORDERED.